Slip Op. 18- 151

# UNITED STATES COURT OF INTERNATIONAL TRADE

| | |
|---|---|
| UNITED STEEL, PAPER AND FORESTRY, RUBBER, MANUFACTURING, ENERGY, ALLIED INDUSTRIAL AND SERVICE WORKERS INTERNATIONAL UNION, AFL-CIO, CLC,<br><br>    Plaintiff,<br><br>v.<br><br>UNITED STATES,<br><br>    Defendant,<br><br>and<br><br>COOPER TIRE & RUBBER COMPANY, CHINA RUBBER INDUSTRY ASSOCIATION, and CHINA CHAMBER OF COMMERCE OF METALS, MINERALS AND CHEMICALS,<br><br>    Defendant-Intervenors. | Before: Jennifer Choe-Groves, Judge<br><br>Court No. 17-00078 |

## OPINION AND ORDER

[Sustaining in part and remanding in part the U.S. International Trade Commission's final negative material injury determination in the antidumping and countervailing duty investigations of truck and bus tires from the People's Republic of China.]

Dated: November 1, 2018

Geert M. De Prest and Jennifer M. Smith, Stewart and Stewart, of Washington, D.C., argued for Plaintiff United Steel, Paper and Forestry, Rubber, Manufacturing, Energy, Allied Industrial and Service Workers International Union, AFL-CIO, CLC.  With him on the brief were Elizabeth J. Drake, Terence P. Stewart, and Philip A. Butler.  Nicholas J. Birch, Lane S. Hurewitz, and Patrick J. McDonough also appeared.

David A.J. Goldfine, Attorney, Office of the General Counsel, U.S. International Trade Commission, of Washington, D.C., argued for Defendant United States. With him on the brief were Dominic L. Bianchi, General Counsel, and Andrea C. Casson, Assistant General Counsel for Litigation.

Ned H. Marshak, Grunfeld Desiderio Lebowitz Silverman & Klestadt, LLP, of New York, N.Y., argued for Defendant-Intervenors China Rubber Industry Association and China Chamber of Commerce of Metals, Minerals and Chemicals. With him on the brief were Max F. Schutzman and Jordan C. Kahn. Andrew T. Schutz and Eve Q. Wang also appeared.

Gregory C. Dorris, Pepper Hamilton, LLP, of Washington, D.C., appeared for Defendant-Intervenor Cooper Tire & Rubber Company.

      Choe-Groves, Judge: This action involves a negative material injury determination regarding truck and bus tires from the People's Republic of China ("China"). Tires covered by this case include new pneumatic rubber tires certified by the U.S. Department of Transportation for on-road or highway use. See Truck and Bus Tires From China, USITC Pub. 4673 at 6, Inv. Nos. 701-TA-556 and 731-TA-1311 (Mar. 2017), available at https://www.usitc.gov/publications/701_731/pub4673.pdf (last visited Oct. 26, 2018) ("USITC Pub. 4673"). The tires are designed for use with vehicles that transport heavy cargo and passengers on roads and highways. See id. Plaintiff United Steel, Paper and Forestry, Rubber, Manufacturing, Energy, Allied Industrial Service Workers International Union AFL-CIO, CLC ("USW") challenges the final negative material injury determination of the U.S. International Trade Commission ("Defendant," "ITC," or "Commission") in the antidumping and countervailing duty investigations of truck and bus tires from China. See Truck and Bus Tires From China, 82 Fed. Reg. 14,232 (Int'l Trade Comm'n Mar. 17, 2017); see also USITC Pub. 4673; Final Consolidated Staff Report and Views, CD 384, Doc. No. 612161 (May 18, 2017).

Before the court is a Rule 56.2 motion for judgment on the agency record filed by USW. See Pl.'s Rule 56.2 Mot. J. Agency R., Sept. 1, 2017, ECF No. 29; see also Pl.'s Mem. P. & A. Supp. Mot. J. Agency R., Sept. 1, 2017, ECF No. 31 ("Pl.'s Mem."). Plaintiff contends that the Commission's final determination that imports of truck and bus tires from China have not materially injured the U.S. truck and bus tire industry is unsupported by substantial evidence and is not in accordance with the law. See Pl.'s Mem. 1–3. The ITC opposes the Rule 56.2 motion and requests that the court sustain the final determination. See Def. U.S. Int'l Trade Comm'n's Mem. Opp'n Pl.'s Mot. J. Agency R., Oct. 31, 2017, ECF No. 37 ("Def.'s Resp."). Defendant-Intervenors China Rubber Industry Association, China Chamber of Commerce of Metals, Minerals & Chemical Importers (collectively, "CRIA"), and Cooper Tire & Rubber Company (collectively, "Defendant-Intervenors") support the ITC's position. See Def.-Intervenors' Resp. Pl.'s Rule 56.2 Mot. J. Agency R., Oct. 31, 2017, ECF No. 35 ("Def.-Intervenors' Resp.").

For the reasons set forth below, the court sustains in part and remands in part the Commission's final determination. Plaintiff's motion for judgment on the agency record is granted in part.

## PROCEDURAL HISTORY

USW filed antidumping and countervailing duty petitions on truck and bus tires with the U.S. Department of Commerce ("Commerce") and the ITC on January 29, 2016. See USITC Pub. 4673 at 1. The Commission initiated an investigation and determined preliminarily that there was a reasonable indication that the domestic industry was materially injured or threatened with material injury by reason of subject imports. See Truck and Bus Tires From China, 81 Fed. Reg. 14,888, 14,888 (Int'l Trade Comm'n Mar. 18, 2016) (preliminary determination).

The Commission published its final determination on March 17, 2017.  See Truck and Bus Tires From China, 82 Fed. Reg. at 14,232.  A majority of the Commissioners found that the domestic industry was neither materially injured nor threatened with material injury by reason of imports of the subject merchandise from China.  See id.

USW initiated proceedings in this court, contesting various aspects of the Commission's final determination.  The court held oral argument on Plaintiff's Rule 56.2 motion for judgment on the agency record on May 15, 2018.  See Confidential Oral Argument, May 15, 2018, ECF No. 58.

## ISSUES PRESENTED

The court considers the following issues:

1. Whether the Commission's findings regarding the conditions of competition, particularly substitutability, tiers, and relative importance of price, are supported by substantial evidence;

2. Whether the Commission's negative adverse price effects determination is supported by substantial evidence and in accordance with the law;

3. Whether the Commission's negative adverse impact determination is supported by substantial evidence and in accordance with the law; and

4. Whether the Commission's negative threat determination is supported by substantial evidence and in accordance with the law.

## JURISDICTION AND STANDARD OF REVIEW

The court has jurisdiction pursuant to 28 U.S.C. § 1581(c) (2012) and Section 516A(a)(2)(B)(ii) of the Tariff Act of 1930, as amended, 19 U.S.C. § 1516a(a)(2)(B)(ii), which grant the court authority to review actions contesting the ITC's final negative injury determination following an antidumping or countervailing duty investigation. The court will uphold the ITC's determinations, findings, or conclusions unless they are unsupported by substantial evidence on the record, or otherwise not in accordance with the law. 19 U.S.C. § 1516a(b)(1)(B)(i); see also Siemens Energy, Inc. v. United States, 806 F.3d 1367, 1369 (Fed. Cir. 2015). The possibility of drawing two inconsistent conclusions from the evidence does not prevent the court from holding that the Commission's determinations, findings, or conclusions are supported by substantial evidence. See Nippon Steel Corp. v. United States, 458 F.3d 1345, 1352 (Fed. Cir. 2006) (citing Am. Silicon Techs. v. United States, 261 F.3d 1371, 1376 (Fed. Cir. 2001)); see also Consolo v. Fed. Mar. Comm'n, 383 U.S. 607, 620 (1966).

## DISCUSSION

**I.      Legal Framework**

In order to make an affirmative material injury determination, the ITC must find that (1) material injury existed and (2) the material injury was caused by reason of the subject imports. See Swiff-Train Co. v. United States, 793 F.3d 1355, 1359 (Fed. Cir. 2015) (quoting Gerald Metals, Inc. v. United States, 132 F.3d 716, 719 (Fed. Cir. 1997)). Material injury is defined by statute as harm that is not inconsequential, immaterial, or unimportant. 19 U.S.C. § 1677(7)(A). To determine whether a domestic industry has been materially injured or

threatened with material injury by reason of unfairly subsidized or less than fair value imports, the Commission considers:

 (I) the volume of imports of the subject merchandise,

 (II) the effect of imports of that merchandise on prices in the United States for domestic like products, and

 (III) the impact of imports of such merchandise on domestic producers of domestic like products, but only in the context of production operations within the United States.

Id. § 1677(7)(B)(i). The Commission may consider such other economic factors as are relevant to the determination regarding whether there is material injury by reason of imports. Id. § 1677(7)(B)(ii). No single factor is dispositive and the significance to be assigned to a particular factor is for the ITC to decide. See S. Rep. No. 96-249, at 88 (1979), reprinted in 1979 U.S.C.C.A.N. 381, 474.

 The statute neither defines the phrase "by reason of" nor provides the ITC with guidance on how to determine whether the material injury is by reason of subject imports. The Court of Appeals for the Federal Circuit has interpreted the "by reason of" statutory language to require the Commission to consider the volume of subject imports, their price effects, their impact on the domestic industry, and to establish whether there is a causal connection between the imported goods and the material injury to the domestic industry. See Swiff-Train Co., 793 F.3d at 1361; see also S. Rep. No. 96-249, at 57–58, 74–75 (1979), reprinted in 1979 U.S.C.C.A.N. 381, 443–44, 460–61.

## II. The Parties' Challenges to the Commission's Final Negative Material Injury Determination

USW disputes various findings made by the Commission that contributed to the final negative material injury determination. The court addresses each finding in turn.

### A. The Commission's Assessment of the Conditions of Competition

USW contends that the Commission's findings on the conditions of competition, specifically regarding substitutability, tiers, and relative importance of price, are not supported by substantial evidence. See Pl.'s Mem. 6–17. In analyzing the conditions of competition, the Commission determined that purchasers would buy higher-priced tires due to perceived differences between domestic and Chinese tires in quality, warranties, tiers, and other non-price features. See USITC Pub. 4673 at 20–26.

The Commission must "evaluate all relevant economic factors . . . within the context of the business cycle and conditions of competition that are distinctive to the affected industry" when considering the impact of subject imports on the domestic industry. 19 U.S.C. § 1677(7)(C)(iii). The statute does not provide further guidance, giving the Commission discretion to assess the conditions of competition in a particular industry. The Commission's findings regarding competition and market conditions must be supported by substantial evidence in the record. See 19 U.S.C. § 1615a(b)(1)(B)(i); see also Siemens Energy, Inc., 806 F.3d at 1369.

Plaintiff asserts that the record evidence does not support the Commission's determination that there is a moderate-to-high degree of substitutability between the domestic and Chinese tires. See Pl.'s Mem. 13. The court disagrees. The degree of substitutability

between domestic and imported truck and bus tires depends on quality, price, and availability. See USITC Pub. 4673 at 23. The Commission's investigation found that among the six domestic producers, five domestic producers reported that the domestic-like products and subject imports were always or frequently interchangeable. See id. In response to the Commission's questionnaires on interchangeability by country, most U.S. producers reported that U.S.-produced truck and bus tires are always interchangeable with Chinese-produced truck and bus tires. See id. at Table II-15. Most importers also reported that U.S.-produced truck and bus tires are frequently or sometimes interchangeable with Chinese-produced truck and bus tires. See id. A plurality of purchasers reported that U.S.-produced truck and bus tires are frequently interchangeable with Chinese-produced truck and bus tires. See id. With respect to interchangeability by tire type, the data compiled in response to the Commission's questionnaires indicate that U.S. producers were split on whether radial truck and bus tires are interchangeable with bias ply truck and bus tires. See id. at Table II-16. A majority of U.S. importers indicated that radial truck and bus tires are sometimes or never interchangeable with bias with tube or bias tubeless tires. See id. U.S. purchasers reported that radial truck and bus tires are always interchangeable with bias with tube and bias tubeless tires. See id. Because the Commission provided substantial evidence to support its determination of a moderate-to-high degree of substitutability through its investigation of production and purchasing decisions, the court finds Plaintiff's argument unpersuasive.

Plaintiff contends that although the record establishes a tiered market for tires, most domestic and Chinese tires overlapped in tiers. See Pl.'s Mem. 1. Plaintiff argues that most purchasers reported inter-tier competition based on price, and purchasers and producers reported

shifting between tiers. See id. at 2, 20. For these reasons, Plaintiff asserts that the ITC's findings with regard to tiers is unsupported by substantial evidence. See id. at 14. The Commission determined that market participants generally reported that the U.S. tire market was divided into three tiers reflecting trade-off and performance. See USITC Pub. 4673 at 24–25. According to the Commission's investigation, half of the responding producers (three of six) and the majority of importers (thirty-one of thirty-five) and purchasers (fourteen of eighteen) reported that bus tires were sold in tiers. See id. at II-16. The record shows that a vast majority of U.S. producers reported only selling products in tiers one, two, and three, whereas importers reported selling a majority of their tires in the third tier. See id. The Commission provided substantial evidence that there is broad recognition of three distinct tiers in the market.

The Commission also provided sufficient evidence that eleven of the fifteen responding purchasers perceived competition between different tiers of truck and bus tires. See USITC Pub. 4673 at II-16. Purchasers reported advertising different tiers through websites and allowing customers to choose between tiers. See id. Additionally, a majority of purchasers (eight of fifteen) indicated that their firms' purchases of truck and bus tires shifted between the categories since 2013. See id. Producers noted very small shifts (less than three percent) between categories. See id. The court concludes that the Commission's findings on tiers are supported by substantial evidence.

Plaintiff maintains that purchasing decisions focused on the price of tires over other non-price factors, and argues that most purchasers who switched from purchasing domestic tires to Chinese tires did so primarily on the basis of price. See Pl.'s Mem. 2, 16. The Commission found that while price was an important factor in purchasing decisions for truck and bus tires,

non-price factors were also important to purchasers. The Commission determined that non-price factors, including brand, warranty, retreadability, technical support, reliability of supply, and product consistency were important in purchasing decisions. See USITC Pub. 4673 at 23–25. The majority of purchasers (eleven of twenty) reported that they only sometimes purchase the lowest priced product. See id. at 23, II-12. When asked about the significance of differences other than price between domestically-produced truck and bus tires and subject imports, most responding purchasers reported that differences other than price were always or frequently important in purchasing decisions for truck and bus tires. See id. at 23. Nine of the eighteen responding purchasers reported that price was a primary reason for purchasing imported product rather than U.S.-produced product. See id. at V-17. Purchasers also identified availability and quality as non-price reasons for purchasing imported rather than U.S.-produced product. See id. The court concludes that the Commission supported with substantial evidence its determination regarding non-price factors in the purchasing decisions of the subject merchandise.

### B. The Commission's Price Effects Determination

USW contests the Commission's price effects analysis as unsupported by substantial evidence and contrary to law. See Pl.'s Mem. 17. In evaluating the effect of imports on prices, the statute directs the Commission to consider whether

(I)  there has been significant price underselling by the imported merchandise as compared with the price of domestic like products of the United States, and

(II) the effect of imports of such merchandise otherwise depresses prices to a significant degree or prevents price increases, which otherwise would have occurred, to a significant degree.

19 U.S.C. § 1677(7)(C)(ii).

With regard to underselling, the Commission found that underselling was pervasive during the period of investigation, but was mitigated by three factors: (1) non-price differences between domestic and Chinese tires permitted domestic producers to compete at higher prices; (2) underselling did not lead the domestic industry to forego significant shipments or output, particularly given their rate of capacity utilization; and (3) there was no price suppression or price depression. See USITC Pub. 4673 at 29–30. The Commission determined further that the subject imports did not depress prices or prevent price increases. See id. at 28–29. The Commission explained that the industry experienced price declines from 2013 to 2015, but this trend was attributed to sharp declines in raw material costs. See id. This observation, combined with the domestic industry's declining cost of goods sold to net sales ratio, led the Commission to find that the subject imports did not have the effect of depressing or suppressing prices. See id. The Commission concluded that the subject imports did not have significant adverse price effects. See id. at 30.

The Commission noted in its final determination that three factors mitigated the prevalent effect of underselling during the period of investigation. One factor was the lack of price depression and price suppression, which the Commission mentioned briefly in one sentence. The Commission failed to give further details, did not reference any statistics, and neglected to explain how its observation supported its conclusion with regard to underselling. By merely relying on its finding for price suppression and price depression, the Commission conflated the two-pronged analysis mandated by the statute. The court concludes that the Commission's final determination regarding price effects is not supported by substantial evidence, and remands the

final determination for the Commission to reconsider its findings in accordance with this opinion.

### C. The Commission's Impact Determination

As part of the material injury analysis, the Commission must consider "the impact of [subject imports] on domestic producers of domestic like products, but only in the context of production operations within the United States." 19 U.S.C. § 1677(7)(B)(i)(III). The statute specifies a number of factors that are relevant in determining whether subject imports have had an adverse impact on domestic producers:

(I) actual and potential decline in output, sales, market share, gross profits, operating profits, net profits, ability to service debt, productivity, return on investments, return on assets, and utilization of capacity,

(II) factors affecting domestic prices,

(III) actual and potential negative effects on cash flow, inventories, employment, wages, growth, ability to raise capital, and investment,

(IV) actual and potential negative effects on the existing development and production efforts of the domestic industry, including efforts to develop a derivative or more advanced version of the domestic like product, and

(V) in a proceeding under part II of this subtitle, the magnitude of the margin of dumping.

Id. § 1677(7)(C)(iii). The Commission is directed to "evaluate all relevant economic factors . . . within the context of the business cycle and conditions of competition that are distinctive to the affected industry." Id.

The Commission determined that the subject imports did not impact the domestic industry significantly. Although U.S. demand for truck and bus tires increased by 21.3 percent from 2013 to 2015, subject imports increased nearly twice that amount, by 41.9 percent. See USITC Pub. 4673 at 45. As a result, the market shares for companies of the subject imports

grew by 4.9 percent, while the market shares for domestic producers dropped by 7.7 percent. See id. at 50. The Commission found that the domestic industry was able to increase production, shipments, employment, wages, productivity, gross profits, operating income, net income, and capital expenditures, and maintain a high capacity utilization rate. See id. at 30–34. Because the domestic industry was able to show success despite the high rate of subject imports, the Commission concluded that the subject imports did not impact the domestic industry. See id. at 36.

      Plaintiff argues that the Commission's impact determination is contrary to law because the Commission failed to analyze the domestic industry's performance within the context of the business cycle and the conditions of competition. See Pl.'s Mem. 27. The Commission considered the U.S. demand for truck and bus tires and several markers of success in the domestic industry, in light of the increased market share of subject imports. These aspects show that the Commission did consider the domestic industry's performance within the context of the business cycle and conditions of competition as required by the statute. Plaintiff's contention lacks merit.

      USW argues that the Commission's attribution of the industry's lack of growth to factors other than rising imports, such as high rates of domestic capacity utilization, is unsupported by substantial evidence. See Pl.'s Mem. 32–39. USW contends that the Commission failed to consider contrary arguments and facts proffered in the final determination. See id. This argument is simply unfounded. The Commission addressed and rebutted each of USW's contentions in its final determination. See USITC Pub. 4673 at 34–36. To the extent that Plaintiff argues that the Commission should have considered other facts or find other witness

statements more credible, Plaintiff's assertions are an impermissible reweighing of the evidence, which is not allowed under the applicable standard of review.  The court concludes that the Commission's negative impact determination is in accordance with the law and supported by substantial evidence.

### D. The Commission's Negative Threat Determination

The statute directs the Commission to consider several enumerated factors, "among other relevant economic factors," when determining whether an industry in the United States is threatened with material injury by reason of imports of subject merchandise.  See 19 U.S.C. § 1677(F)(i).  Those factors are:

(I) if a countervailable subsidy is involved, such information as may be presented to it by the administering authority as to the nature of the subsidy (particularly as to whether the countervailable subsidy is a subsidy described in Article 3 or 6.1 of the Subsidies Agreement), and whether imports of the subject merchandise are likely to increase,

(II) any existing unused production capacity or imminent, substantial increase in production capacity in the exporting country indicating the likelihood of substantially increased imports of the subject merchandise into the United States, taking into account the availability of other export markets to absorb any additional exports,

(III) a significant rate of increase of the volume or market penetration of imports of the subject merchandise indicating the likelihood of substantially increased imports,

(IV) whether imports of the subject merchandise are entering at prices that are likely to have a significant depressing or suppressing effect on domestic prices, and are likely to increase demand for further imports,

(V) inventories of the subject merchandise,

(VI) the potential for product-shifting if production facilities in the foreign country, which can be used to produce the subject merchandise, are currently being used to produce other products,

(VII) in any investigation under this subtitle which involves imports of both a raw agricultural product (within the meaning of paragraph (4)(E)(iv)) and any

>    product processed from such raw agricultural product, the likelihood that there will be increased imports, by reason of product shifting, if there is an affirmative determination by the Commission under section 1671d(b)(1) or 1673d(b)(1) of this title with respect to either the raw agricultural product or the processed agricultural product (but not both),
>
> (VIII) the actual and potential negative effects on the existing development and production efforts of the domestic industry, including efforts to develop a derivative or more advanced version of the domestic like product, and
>
> (IX)    any other demonstrable adverse trends that indicate the probability that there is likely to be material injury by reason of imports (or sale for importation) of the subject merchandise (whether or not it is actually being imported at the time).

Id. The Commission shall consider the factors as a whole when making its determination, and the "presence or absence of any factor . . . shall not necessarily give decisive guidance with respect to the determination." Id. at §1677(F)(ii).

The Commission analyzed the statutory factors and discussed its findings using the same volume, price, and impact framework as its material injury analysis. See USITC Pub. 4673 at 36–37 n.233. The Commission found that reported production capacity in China increased from 2013 to 2014, but decreased thereafter, with production projected to be at similar levels in the future. See id. at 37 n.234–35. The Commission noted that non-U.S. markets account for a large majority of the Chinese industry's exports. See id. at 37 & n.236. When considering the likelihood of substantially increased imports through an examination of antidumping and countervailing duty orders in third-country markets in 2015, the Commission found that the volume of subject imports did not increase rapidly. See id. 38 n.237. Inventories of truck and bus tires held by subject producers in China increased irregularly from 2013 to 2015, but were projected to decline. See id. at 38. U.S. importers' inventories of subject merchandise increased in the same period, but were stable overall relative to total U.S. shipments of imports. See id.

The Commission found, based on information available on the record, that product shifting was not an issue because most responding Chinese producers reported that they could not switch production from truck and bus tires to other products. See id. at 38 n.237. The Commission determined further that imports were unlikely to cause significant price effects in the imminent future because "although underselling coincided with declines in prices for the domestic like product, those price declines resulted from substantial declines in raw material costs." See id. at 39–40. The Commission did not find the domestic industry to be vulnerable to actual and potential negative impacts, and "subject imports from China [were] not likely to have a significant impact on the domestic industry in the near future." Id. at 40. As a result, the Commission determined that the domestic industry was not threatened with material injury by reason of subject imports. See id. at 41. USW asserts that this determination is unsupported by substantial evidence and contrary to law for several reasons. See Pl.'s Mem. 39.

　　　　USW contends that the Commission's conclusion regarding the nature of subsidies is erroneous, and asks the court to remand on this issue. See Pl.'s Mem. 40–41. Defendant argues that the Commission's finding on this issue is reasonable and supported by substantial evidence. See Def.'s Resp. 41. Defendant-Intervenors concede that the Commission may have erred in finding that none of the programs constitute export subsidies, but argue that the error is insignificant, harmless, and does not warrant a remand because the Commission considered several factors in its threat analysis, only one of which is export subsidies. See Def.-Intervenors' Resp. 41–42. Here, the Commission noted that in the parallel countervailing duty investigation, Commerce found fifteen subsidy programs to be countervailable. See USITC Pub. 4673 at 38–39 n.237. The ITC determined that the subsidization would result in increased volumes of

imports after considering the nature of the subsidy programs, "none of which Commerce found to be an export subsidy." Id.  The relevant documents show, however, that Commerce found "evidence of countervailable subsidies contingent upon export that are inconsistent with the World Trade Organization Agreement on Subsidies and Countervailing Measures" in the related countervailing duty determination in this proceeding.  See Issues and Decision Memorandum for the Final Determination in the Countervailing Duty Investigation of Truck and Bus Tires from the People's Republic of China; and Final Affirmative Determination of Critical Circumstances, in Part at 7, C-570-041 (Jan. 19, 2016), available at https://enforcement.trade.gov/frn/summary/prc/2017-01862-1.pdf (last visited Oct. 26, 2018) ("Final IDM"); see also Truck and Bus Tires From the People's Republic of China, 82 Fed. Reg. 8,606 (Dep't Commerce Jan 27, 2017) (final affirmative countervailing duty determination, final affirmative critical circumstances determination, in part).  Two of the countervailable subsidy programs identified by Commerce are clearly export-related as evidenced by their names: "Export Seller's Credits from State-Owned Banks" and "Export Buyer's Credits from State-Owned Banks."  See Final IDM at 20. Based on the record, there is a clear discrepancy between Commerce's statement and the Commission's findings.  The court remands the Commission's final determination with instructions for the Commission to reconsider its finding on the nature of export subsidies consistent with this opinion.

Plaintiff asserts that the Commission's negative threat determination with respect to price effects is unreasonable because it is premised on the Commission's present price effects finding. Because the court remands the final determination to reconsider the present price effects finding,

as explained *supra*, the court directs the Commission to reconsider the negative threat determination on this basis as well.

The court defers on analyzing Plaintiff's other challenges to the Commission's findings regarding volume and impact in the threat determination at this time.

## CONCLUSION

For the foregoing reasons, the court concludes that:

1. The Commission's findings regarding the conditions of competition, particularly substitutability, tiers, and relative importance of price, are supported by substantial evidence;

2. The Commission's negative adverse price effects determination is not supported by substantial evidence;

3. The Commission's negative adverse impact determination is supported by substantial evidence and in accordance with the law; and

4. The Commission's negative threat determination is not supported by substantial evidence.

The court remands the Commission's final determination for reconsideration consistent with this opinion. USW's Rule 56.2 motion for judgment on the agency record is granted in part. Accordingly, it is hereby

**ORDERED** that the Commission shall file its remand redetermination on or before January 4, 2019; and it is further

**ORDERED** that the Commission shall file the administrative record on remand on or before January 18, 2019; and it is further

**ORDERED** that the Parties shall file any comments on the remand redetermination or before February 4, 2019; and it is further

**ORDERED** that the Parties shall file replies to the comments on or before March 6, 2019; and it is further

**ORDERED** that the joint appendix shall be filed on or before March 20, 2019.

        /s/ Jennifer Choe-Groves
    Jennifer Choe-Groves, Judge

Dated: November 1, 2018
       New York, New York